IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AARON JAMES,
    **Plaintiff,**

    v.

TRANS UNION LLC, *et al.*,
    **Defendants.**

:
:
:
:
:
:
:
:

**CIVIL ACTION NO. 26-CV-2017**

MEMORANDUM

WEILHEIMER, J.                                                                                    APRIL 9, 2026

Plaintiff Aaron James filed this case *pro se* against credit reporting agencies Trans Union LLC, Equifax Information Services LLC, Experian Information Services LLC (collectively the "CRAs"), and the Domestic Relations Section of the Philadelphia Court of Common Pleas ("DRS"). James raises claims under the Fair Credit Reporting Act ("FCRA").[1] He also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant James *in forma pauperis* status and dismiss the Complaint. He will be given an opportunity to file an amended complaint in the event he can cure the deficiencies identified by the Court in his claims against the CRAs.

I.       **FACTUAL ALLEGATIONS**[2]

James's allegations are brief. He discovered that the "Defendants were reporting a collection account identified as 'PHILADELPHIA CO DRS' with a balance of approximately

---

[1] James has filed a separate civil action alleging constitutional claims and FCRA claims against several individuals and named DRS as a defendant in that action as well. *See James v. Pa. Dep't of Hum. Servs.*, No. 26-2065 (E.D. Pa.).

[2] The allegations are taken from James's Complaint (ECF No. 2), consisting of the Court's preprinted form complaint available for use by unrepresented litigants, a typewritten submission, and an attached exhibit. The Court deems the entire submission to constitute the Complaint and adopts the sequential pagination supplied by the CM/ECF docketing system.

$7,462." (Compl. at 6.)  He disputed the accuracy of this account with "all Defendant credit reporting agencies," providing documentation from the United States Department of Treasury showing a payment of $7,076 was applied to the alleged debt on or about February 25, 2026 through the Treasury Offset Program.  (*Id.*)  He claims the Defendants failed to properly investigate the balance or status and, upon his information and belief, "relied on automated systems and failed to review [his] submitted documentation."  (*Id.*)  James alleges that the DRS furnished inaccurate information and failed to update the account after receiving payment.  (*Id.*)  As a result, inaccurate information continues to be reported on his credit file, causing unspecified "damage to his credit reputation, denial of opportunities, and emotional distress."  (*Id.*)  He asserts FCRA claims under 15 U.S.C. §§ 1681e(b), 1681i, 1681s-2(b), and 1681n for willful failure to conduct a reasonable investigation and correct inaccurate information, for which he seeks money damages and removal/correction of his account information by the CRAs.  (*Id.* at 4, 6-7.)  Attached to the Complaint is a document from the United States Treasury indicating that $7,076 of a payment due to James was applied to a debt owed to the DRS.  (*Id.* at 8.)

## II.    STANDARD OF REVIEW

Because James appears to be incapable of paying the filing fees to commence this action, the Court will grant him leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Section 1915 also requires the dismissal of claims for monetary relief brought against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also, e.g., Rauso v. Giambrone*, 782 F. App'x 99, 101 (3d Cir. 2019) (*per curium*) (holding that § 1915(e)(2)(B)(iii) "explicitly states that a court shall dismiss a case 'at any time' where the action seeks monetary relief against a defendant who is immune from such relief"); *Ellison v. Smith,* 778 F. App'x 195, 196 (3d Cir. 2019) (*per curiam*) ("A District Court is authorized to dismiss a complaint sua sponte on the immunity grounds of § 1915(e)(2)(B)(iii) when it is clear on the face of the complaint that a party is immune from suit." (citing *Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002)).

Furthermore, the Court must dismiss the Complaint if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir.

2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). "Jurisdictional [issues] . . . may be raised at any time and courts have a duty to consider them *sua sponte.*" *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (internal quotations omitted). The Court's continuing obligation to assure its jurisdiction includes an assessment of whether the plaintiff lacks standing to bring their claim. *See Seneca Res. Corp. v. Township of Highland*, 863 F.3d 245, 252 (3d Cir. 2017) ("Our 'continuing obligation' to assure that we have jurisdiction requires that we raise issues of standing and mootness sua sponte.") (citation omitted); *see also Boley v. Universal Health Servs., Inc.,* 36 F.4th 124, 130 (3d Cir. 2022) (same).

Because James is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

4

A.    **The FCRA**

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (noting that the FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant and current information in a confidential and responsible manner" (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010))).  In the language of the FCRA, consumer reporting agencies "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).  The FCRA provides for civil liability for noncompliance due to willfulness and negligence. *See* 15 U.S.C. § 1681n (creating civil liability for willful noncompliance with any portion of the Act); *id.* § 1681o (creating civil liability for negligent noncompliance with any portion of the Act).  A willful violation of the FCRA requires the additional showing that the defendant acted knowingly or with reckless disregard of the statute's terms. *Seamans*, 744 F.3d at 868 (3d Cir. 2014).

Consumer reporting agencies are required to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).  To state a claim under this section, a plaintiff must plead the following elements: (1) inaccurate information was included in a credit report; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered an injury; and (4) that injury

was caused by the inclusion of the inaccurate entry. *Cortez*, 617 F.3d at 708 (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)).

The FCRA also "confers on a consumer a right to have the negative information on his or her credit report investigated for accuracy." *Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 211 (E.D. Pa. 2007) (citing 15 U.S.C. § 1681i(a)(1)(A)). In that regard, if a consumer disputes the completeness or accuracy of information contained in her file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). To allege plausibly that a consumer reporting agency is liable under this provision for failing to reinvestigate a dispute under the FCRA, the consumer must allege facts that the consumer reporting agency had a duty to do so, and that it would have discovered a discrepancy had it undertaken a reasonable investigation. *Cortez*, 617 F.3d at 713 (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)).

Accordingly, to proceed under either § 1681e(b) or § 1681i(a), a plaintiff must allege a factual basis that the reported information was inaccurate. *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342-43 (3d Cir. 2022); *see also Angino v. Trans Union LLC*, 784 F. App'x 67, 69 (3d Cir. 2019) ("To prevail under [a § 1681e(b) claim or a § 1681i(a) claim], the . . . [plaintiffs] must show that their credit report contains inaccurate information."). A court "does not need to reach or consider the reasonableness of a credit reporting agency's procedures under 15 U.S.C. § 1681e or the reasonableness of a credit reporting agency's reinvestigation under § 1681i unless the information contained in the report is inaccurate." *Holland v. Trans Union LLC*, 574 F. Supp. 3d 292, 297-98 (E.D. Pa. 2021) (citation omitted).

A consumer report is inaccurate "when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Schweitzer*

*v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011) (*per curiam*) (cleaned up); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *Shimon v. Equifax Info. Servs. LLC*, 431 F. Supp. 3d 115, 120 (E.D.N.Y. 2020), *aff'd*, 994 F.3d 88 (2d Cir. 2021). "[I]nformation that is technically accurate but materially misleading is sufficient to trigger § 1681i(a), just as it is for § 1681e(b)." *Bibbs*, 43 F.4th at 345 (citing *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018)). Additionally, the consumer reporting agency "may terminate a reinvestigation of information disputed by a consumer . . . if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681i(a)(3)(A).

### B.    Claim Against the Domestic Relations Section

James seeks to hold the DRS liable for money damages under the FCRA as a furnisher of information. The claim cannot proceed because the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). The Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b). The DRS is part of the Philadelphia Court of Common Pleas, *see* https://www.courts.phila.gov/common-pleas/family/dr/ (last viewed Apr. 2, 2026), and thus part of Pennsylvania's unified judicial system, which shares in the Commonwealth's Eleventh Amendment immunity. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).

7

Notably, FCRA imposes obligations on and provides for liability of "persons," which the statute defines to include the "government" and "governmental subdivision[s] or agenc[ies]." *See* 15 U.S.C. § 1681a(b).  However, courts have held that this provision did not abrogate the states' Eleventh Amendment immunity since Congress did not do so in a manner that was "unmistakably clear in the language of the statute." *Hutchinson v. Carco Grp., Inc.*, No. 15-1570, 2015 WL 5698283, at *8 (E.D. Pa. Sept. 29, 2015) (collecting cases and holding "we conclude that Congress did not abrogate the States' sovereign immunity in the FCRA because Congress enacted the FCRA pursuant to its Commerce clause powers and, thus, lacked the authority to take away the States' sovereign immunity in that statute."); *see also Wright v. Applied Bank*, No. 11-585, 2012 WL 3758957, at *2 (D. Del. Aug. 28, 2012) (collecting cases and finding Philadelphia Traffic Court to have Eleventh Amendment immunity from FCRA claims).  Accordingly, the claim against the DRS will be dismissed without prejudice by virtue of its Eleventh Amendment immunity.

C.    **Standing to Bring FCRA Claims Against the CRAs**

A plaintiff must have standing to bring an FCRA claim and plead facts in support thereof in the Complaint.  Article III of the Constitution limits the power of the federal judiciary to the resolution of cases and controversies, and this "requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008).  To have standing to bring a claim in federal court, a plaintiff must show, *inter alia*, that he has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotations omitted).  "For an

injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1.).

In *TransUnion LLC v. Ramierz*, 594 U.S. 413, 425 (2021), the Supreme Court focused on the "concreteness" prong of the standing analysis. The Court expressly rejected the notion that "a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 426 (quoting *Spokeo*, 578 U.S. at 341). Instead, a plaintiff must allege a concrete injury separate and apart from an injury under the law. *Id.* at 427 (explaining that "an injury in law is not an injury in fact"). The Court differentiated between tangible and intangible injuries. Where a defendant has caused a tangible harm, *i.e.*, physical or monetary harm, the plaintiff will have suffered a concrete injury in fact. *Id.* at 424-25. Intangible harms may also be concrete, so long as those injuries bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425 (citing *Spokeo*, 578 U.S. at 340-41).

It is not clear from his Complaint that James has standing to bring FCRA claims against the CRAs. The party who invokes federal jurisdiction bears the burden of establishing standing. *Spokeo*, 578 U.S. at 339. To satisfy the standing requirement, James must sufficiently tie alleged injuries to the conduct of a defendant, because a bare procedural violation, even if one is alleged, is not sufficient to create standing. *Id.* at 341. James's assertion in his Complaint that he "suffered harm including damage to credit reputation, denial of opportunities, and emotional distress" (Compl. at 6) is conclusory, lacking any supporting allegations about how he was harmed and which, if any, of the Defendants created that harm. Accordingly, he has not alleged facts to support the claim that he suffered a concrete tangible or intangible injury resulting from the Defendants' conduct that would nudge his claim beyond a bare procedural violation. *See*

9

*Iqbal*, 556 U.S. at 680 (stating that a complaint must nudge claims "across the line from conceivable to plausible" (citing *Twombly*, 550 U.S. at 545)).

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss James's claims against DRS with prejudice and dismiss the remainder of the Complaint without prejudice due to the jurisdictional defect.  James will be given leave to file an amended complaint in the event he can alleged additional facts to state a plausible claims and concrete harm arising from the Defendants' conduct.[3]  An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

**GAIL A. WEILHEIMER, J.**

---

[3] Because the jurisdictional standing issue is a threshold concern, the Court does not reach any other issue with regard to whether James's substantive allegations state plausible claims against the CRAs.  Should he opt to pursue his claims by filing an amended complaint, James is reminded that, to be plausible, a claim based on inaccurate information in a consumer report must assert facts showing the information is patently incorrect or misleading in such a way and to such an extent that it can be expected to have an adverse effect.  The allegations of inaccuracies in James's Amended Complaint appear undeveloped since he does not differentiate which CRAs may have included inaccurate information.

Also, § 1681i(a)(1)(A) sets forth the timeframe during which a consumer reporting agency must conduct a reinvestigation if requested by a consumer.  If he chooses to file an amended complaint, James should note that § 1681i(a)(6) provides the response time for the results of the reinvestigation.  Section 1681i(a)(6) provides that a consumer reporting agency must provide written notice to a consumer of the results of a reinvestigation under § 1681i "not later than 5 business days after the completion of the reinvestigation" by mail, or other means of notification that was approved by the consumer. *See* 16 U.S.C. § 1681i(a)(6).  It is not clear that the CRAs failed to timely respond since James filed this case on March 27, 2026 and it appears that he relies on a Treasury document dated February 25, 2026.  He does not state when he made his request for reinvestigation or when or if he received a response.  Furthermore, as discussed above, the Court reiterates that a bare procedural violation, divorced from any concrete harm, does not satisfy the injury-in-fact requirement of Article III.